IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AUGUSTIN SILVA,            ) | Case No.: 1:10-cv-02368 AWI JLT |
|                            ) | |
| Plaintiff,                 ) | ORDER GRANTING MOTION FOR |
|                            ) | INDEPENDENT MENTAL EXAMINATION |
| v.                         ) | |
|                            ) | (Doc. 19) |
| MERCADO FOOD ENTERPRISE, INC, ) | |
|                            ) | |
| Defendant.                 ) | |
| _____  ) | |

Before the Court is the motion filed by Defendant to obtain an independent mental health examination of Plaintiff. (Doc. 19) Defendant contends that Plaintiff has placed his mental health in controversy by alleging severe and ongoing mental health injuries resulting from the actions of Defendant, by seeking damages to compensate for the cost of this past and ongoing treatment and by indicating an intention to provide expert witness testimony at trial. Id. at 5-7. Likewise, Defendant asserts that good cause exists to allow the examination due to Plaintiff's claim of an ongoing psychological injury and to allow Defendant to be in a posture to present evidence that "alternative stressors" are to blame for any ongoing mental health impacts. Id. at 7-8. For the reasons set forth below, the Court **GRANTS** the motion for the mental health examination.

I.   **Background**

In his complaint, Plaintiff alleges that while employed in the meat department of Defendant's store, he was repeatedly sexually harassed by coworkers and one or more supervisors. (Doc. 1 at 2)

1  Plaintiff alleges that he reported the harassment but that this failed to stop the harassment. Id.
2  Plaintiff alleges also that as a result of the harassment, he suffered emotional distress that required
3  him to seek mental health treatment. Id. at 3. Given the emotional impacts from the harassment,
4  Plaintiff claims that he has been unable to work and anticipates being unable to work for the
5  foreseeable future. Id. at 3-4.

6  In his initial disclosures, made on May 12, 2011, Plaintiff identified his treating psychiatrist,
7  Dr. Fernandez, and reported that he would testify that the cause of Plaintiff's mental condition was
8  the alleged harassment. (Doc. 23- 4 at 3.) Likewise, Plaintiff asserted that his damages included
9  "emotional distress" and claimed that it was "significant enough to cause him to miss significant
10 work" and claimed that he would likely be off work for another year. Id. at 3-4. Plaintiff
11 supplemented his disclosures in June 2011, and identified other treating physicians though all but
12 one of these newly identified physicians, treated the allergic reaction Plaintiff suffered after taking
13 prescribed psychotropic medication. (Doc. 23-5 at 2-4) Also, Plaintiff identified the custodian of
14 records for the Mary K. Shell Mental Health Center and Dr. Alvarez. Id. at 2. Plaintiff indicated
15 that Dr. Alvarez would testify regarding treatment he provided Plaintiff after he suffered harassment
16 at work. Id. Notably, Dr. Fernandez was no longer identified as a witness.[1] Id. at 2-4. It is notable
17 also that Plaintiff captioned both of these disclosures as occurring pursuant to Fed. R. Civ. P. 26
18 (a)(1) and (2). Thus, apparently, Plaintiff intended both of these disclosures to constitute expert
19 disclosure in addition to his initial disclosure.

20 In response to discovery, Plaintiff asserted that he was forced to take prescription medication
21 for the emotional upset caused by the harassment which led to a period of hospitalization caused by
22 an allergic reaction to the medication. (Doc. 20-1 at 14) This cost approximately $70,000. (Doc. 20-
23 3 at 5) He reported also that he continued to be treated for the anxiety and mental distress caused by
24 the harassment, he continued to suffer sleep interruption caused and has had symptoms consistent
25 with post traumatic stress disorder, panic and a fear of being around others. (Doc. 20-1 at 14; Doc.
26 20-3 at 9, 10) Plaintiff identified his treating doctors. (Doc. 20-1 at 14-15) Based upon these

27
28  [1] Around this same time, Plaintiff provided treatment records from Dr. Fernandez to Defendant, although the content of these records is not known. (Doc. 23-6 at 3; Doc. 23-7 at 2)

2

ongoing problems, Plaintiff reported that he had not worked.  (Doc. 20-1 at 17)  Plaintiff estimated that, as of April 2011, he had lost $36,000 in lost wages and after that he would continue to lose $1,560 per month as a result of Defendant's actions.  (Doc. 20-3 at 5)

On December 9, 2011, Plaintiff made his third expert disclosure.  (Doc. 20-3 at 17-19)  This time, Plaintiff limited the information to the doctors who had provided psychiatric and medical care which, he asserts, stemmed from the harassment.  The list is composed of all of the doctors from both Rule 26 disclosures.  (Id; Doc. 23- 4 at 3; Doc. 23-5 at 2-4.)  Thus, Dr. Fernandez is listed and it indicates that he was expected to testify that the sexual harassment caused Plaintiff's current mental health condition and about the allergic reaction caused by the prescribed medication.  (Doc. 20-3 at 17.)

Defendant has retained licensed clinical psychologist, Dr. Marcel Ponton, to perform an independent mental health examination of Plaintiff.  (Doc. 21)  Dr. Ponton attests that he intends to exam Plaintiff via a clinical interview and standardized testing.  Id. at 2-4.  Dr. Ponton reports that, "Standardized written tests are the only mechanism by which to obtain an objective evaluation of the examinee's symptoms and history."  Id. at 4. Likewise, Dr. Ponton reports that the tests will assist "in determining whether and to what extent Plaintiff is continuing to suffer emotional distress, as well as the cause of any such continuing emotional distress.  Id. at 3.  Finally, Dr. Ponton asserts that, "Testing also is used in assessing whether subjects are exaggerating or minimizing their symptoms, and can provide an independent source of information concerning the level of stress experienced."  Id. at 3.  In whole, Dr. Ponton anticipates that the complete evaluation will take between five to seven hours.  Id. at 2.

Defendant has scheduled the IME on January 23, 2012 and Dr. Ponton will be prepared to submit to deposition before the expiration of the expert discovery period.  (Doc. 26 at 5)  Defendant disclosed Dr. Ponton as its retained expert and also disclosed him as a rebuttal expert, albeit without providing expert reports.[2]  (Docs. 26-2, 26-3)

---

[2] Defendant explains that Dr. Ponton is unable to prepare the report until he conducts the IME.  While not condoning this course of action, the Court makes no comment on its propriety as this is peripheral to the issues raised by the motion and its opposition.

**II.     Analysis**

     **A.     Plaintiff's mental condition is at issue and there is good cause to order the mental examination.**

If good cause is demonstrated, the Court "may order a party whose mental or physical condition . . . is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner." Fed. R. Civ. P. 35(a)(1); Ford v. Contra Costa County, 179 F.R.D. 579 (N.D. Cal. 1998) ("It is well established that a party seeking to compel the psychiatric evaluation of an adverse party must demonstrate that (1) the adverse party's mental condition is in controversy and (2) there is good cause for the examination."). The moving party bears the burden of establishing the "in controversy" and "good cause" requirements. Schlagenhauf v. Holder, 379 U.S. 104, 118 (1964).

In general, a party's mental condition is in controversy when the case involves, a claim for intentional or negligent infliction of emotional distress, there is an allegation of a specific mental or psychiatric injury or disorder, a claim of unusually severe emotional distress, the plaintiff offers expert testimony to support the claim of emotional distress and when the plaintiff has conceded that his mental condition is in controversy. See Turner v. Imperial Stores, 161 F.R.D. 89, 97 (S.D. Cal.1995); Ragge v. MCA/Universal Studios, 165 F.R.D. 605, 608 (C.D. Cal. 1995). Here, there is no dispute that Plaintiff's mental condition is "in controversy." Indeed, the complaint, the disclosures, the discovery responses and the expert disclosures make clear that Plaintiff's mental condition is absolutely in controversy and has been since the inception of this case.

On the other hand, Plaintiff contends that there is not good cause for the examination. (Doc. 23 at 8-9) "Good cause" generally requires a showing of specific facts justifying the exam. The Court is to evaluate, for example, whether the information may be obtained through other means, whether the plaintiff plans to prove his claim through testimony of expert witnesses, whether the result of the examination would yield information that is relevant and whether plaintiff claims ongoing emotional distress. See Turner v. Imperial Stores, 161 F.R.D. at 97-98 (expert testimony); Ragge v. MCA/Universal Studios, 165 F.R.D. at 608 (ongoing emotional distress); Schlagenhauf, 379 U.S. at 118-119 (information otherwise available).

It is beyond dispute that Plaintiff intends to present expert testimony related to the ongoing

emotional damage claim, that he intends to prove his claim of ongoing emotional distress through the presentation of expert testimony.   Moreover, there has been no argument that the examination results would not be relevant.  Instead, Plaintiff argues only that the information is available without need for the examination.³ (Doc. 23 at 9.)  The Court notes that Dr. Ponton has asserted that he cannot come to any objective conclusion about Plaintiff's mental state, and seems to contend that no one else can either, unless the examination occurs.  (Doc. 21 at 4)  In particular, Dr. Ponton asserts, "Standardized written tests are the only mechanism by which to obtain an objective evaluation of the examinee's symptoms and history." Id.  On the other hand, though the court is greatly concerned that Defendant made no effort to depose Dr. Fernandez, Plaintiff's counsel admitted at the argument on this motion, that there is no objective standardized testing contained in Dr. Fernandez's records.  Thus, though Plaintiff argues that everything that is needed to opine as to Plaintiff's mental state is available in the records, this is contradicted by Dr. Ponton who makes clear that he can opine *only* if he obtains this testing.  Therefore, the Court finds that the information is not otherwise available and good cause exists to allow the examination.

  Nevertheless, even where the mental condition is in controversy and good cause for the examination has been shown, it is still within the Court's discretion to refuse to order an examination. Stinchcomb v. United States, 132 F.R.D. 29, 30 (E.D.Pa.1990).  Although the rule is to be construed liberally to allow the examination, the court must balance the Plaintiff's interest in avoiding unnecessary invasion of his privacy against Defendant's right to a fair trial. Curtis v. Express, Inc., 868 F.Supp. 467, 468 (N.D.N.Y.1994).

  Here, Plaintiff argues, at least impliedly, that the Court should exercise its discretion to deny the examination for several reasons.  First, Plaintiff argues that though he completed high school, he is illiterate and is not fluent in English.  (Doc. 23 at 9)  Thus, Plaintiff contends that he would need someone to "read and interpret . . questions." (Doc. 23 at 9)  However, Defendant makes clear, and Dr. Ponton's CV supports, that he is fluent in Spanish and particularly attuned to the impact of

---

³Moreover, Plaintiff suspects that Defendant will use the IME as an opportunity to "insert the possibility of other stressors." Id. However, because Plaintiff himself, via his testimony and reports to doctors (Doc. 20-2 at 17, 18; Doc. 20-3 at 12, 13) has raised the specter that there are other stressors that may cause some of the emotional distress from which he suffers, this argument rings hollow.

mental and emotional disabilities on people of Latino descent.  (Doc. 26 at 6; Doc. 21 at 2, 4, 5) Thus, the Court is assured that Dr. Ponton would not speak to Plaintiff in the language with which Plaintiff is most comfortable.  Likewise, the Court presumes that the testing that Dr. Ponton intends to conduct can be conducted orally, as would be required, given Plaintiff's reading deficits.

Plaintiff intimates that because he is "mildly retarded" somehow this would impact his ability to participate in the testing. (Doc. 23 at 9)  However, how or why this precludes the testing is not explained. The question of greater concern to the Court, is whether Plaintiff is emotionally capable of participating in the testing.  Counsel reports that Plaintiff "becomes very nervous" but inidcates that this nervousness can be countered by the presence of a family member. Id.  However, other than the claims of emotional distress, which was described in discovery to consist primarily of anxiety and depression, the Court has no basis to determine that he is emotionally incapable of participating in the testing.  Plaintiff does not provide any evidence from his treating physician that he is not capable of doing so or that participation would cause him harm.  Therefore, the Court finds that Defendant's right to a fair trial outweighs Plaintiff's right not to be subjected to the evaluation.

**B.     The demand for the IME is not untimely**

Plaintiff's primary argument against granting the motion is that it was not timely made.  He asserts that an IME is part of "fact discovery" and, as a result, must occur during the non-expert discovery period set forth in the scheduling order.  The order issued in this case required that all non-expert discovery be completed no later than December 1, 2011.  (Doc. 14 at 2) Joint expert disclosures were ordered to occur no later than December 9, 2011 and rebuttal disclosures to occur by January 6, 2012.  Id.  Expert discovery was ordered to be completed by February 3, 2012.  Id.

The scheduling order required also that expert disclosure would occur pursuant to Federal Rules of Civil Procedure 26 (a)(2), (A), (B), and (C) and that the disclosures were required to contain all of the information outlined in these sections.  (Doc. 14 at 2) Likewise, the Court ordered that,

> The provisions of Fed. R. Civ. P. 26(b)(4) and (5) shall apply to all discovery relating to experts and their opinions. Experts must be fully prepared to be examined on all subjects and opinions included in the designation. Failure to comply will result in the imposition of sanctions, which may include striking the expert designation and preclusion of expert testimony.

Id.  Likewise, the scheduling order reminded the parties of their obligation to supplement their

6

disclosures. Id. Impliedly, then, the scheduling order contemplated that at the time of the disclosure, the expert would have completed his analysis of the situation sufficiently to allow him to express his opinions in a written report. Fed. R. Civ. P. 26(a)(B) ([This disclosure must be accompanied by a written report . . . The report must contain: (i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them . . .") On the other hand, the scheduling order allowed that any non-dispositive motion could be filed as late as February 10, 2012. (Doc. 14 at 3) Clearly, a Rule 35 motion is a non-dispositive motion. Thus, there is an ambiguity in the order.

On the other hand, it appears clear that Plaintiff alerted Defendant that his mental condition was at issue from the earliest pleading. In his complaint for damages, for example, Plaintiff claimed that he had been unable to work and anticipated being unable to work for the foreseeable future due to the emotional toll wrought upon him by the alleged sexual harassment. (Doc. 1 at 3-4.) On the other hand, the Court is troubled by his "supplemental" initial disclosure, which occurred in June 2011. The Court recognizes that it is captioned as a "supplemental" but it contains some duplicated information such that it was not quite clear whether it was intended truly to supplement the previous disclosure or to amend it. The confusion was furthered by the statement that Plaintiff intended to incorporate the disclosure made by Defendant but made no such clarification as to his own, previously made disclosure. This situation is confounded, somewhat, by the fact that Plaintiff continued to press his emotional distress claims and supported these claims with records from Dr. Fernandez. (Doc. 23-6 at 3; Doc. 23-7 at 2)

Likewise, the effect of providing three expert disclosures with varying information was not explained to the Court's satisfaction. Even now the Court is not clear whether Plaintiff intends all three disclosures to constitute his "expert disclosure," or if the last one controls. If the former, the Court is not convinced how the varying descriptions of the witnesses' testimony can be harmonized. If the latter, the Court is not sure of the content of the "notice" conveyed to Defendant as to the expected testimony of witnesses that Plaintiff is required to provide under Fed. R. Civ. P. 26(a)(2)(C). Thus, the Court concludes that, though it was clear that Plaintiff had placed his mental condition in controversy, whether Plaintiff intended to offer the testimony of a psychiatrist was not.

In any event, Rule 35 does not set forth when a demand for an IME must be made. Instead, the Rule permits the Court to grant a request for an IME whenever a case is "pending." Fed. R. Evid. 35. Nevertheless, courts have taken different positions whether Fed. R. Civ. P. 26(a)(2) requires that the IME report be produced at the time of the expert disclosure meaning by necessity, that any such exam occur before the period for disclosure.[4] In Minnard v. Rotech Healthcare Inc., 2008 U.S. Dist. LEXIS 6149 at *6 (ED CA Jan. 15, 2008), the court determined that a report from an IME is, indeed, an expert report. The reasoning of the court that the report is an expert report under Fed. R. Civ. P. 26, the examining expert would not merely recite the objective results of the examination but would interpret them and conclude for the trier of fact. Id. The Court agrees that if this were not so, no one would bother retaining such an expert. Instead, the expert is expected "to advocate within reasonable grounds on behalf of the person for whom retained." Id. Thus, Minnard concluded that the timing of the Rule 35 motion should, therefore, be dictated by the terms of the scheduling order.

Clearly, the Court may alter the deadlines set forth in Rule 26. Indeed, the Rule repeatedly indicates that its time frames apply unless the Court orders otherwise. Thus, even if the Court here adopts the Minnard rationale, as described above, the scheduling order here simply did not contemplate the timing of an IME. The Court is quite aware that when determining a Rule 35 motion, this Court is to construe Rule 35 liberally in favor of granting discovery. See Schlagenhauf v. Holder, 379 U.S. at 114-115. Likewise, a purpose of Rule 35 is to "'level the playing field' between parties in cases in which a party's physical or mental condition is in issue. 'Granting a request for a psychiatric examination pursuant to Rule 35 is to preserve [] the equal footing of the parties to evaluate the plaintiff's mental state….' Ragge v. MCA Universal, 165 F.R.D. at 608. "A plaintiff has ample opportunity for psychiatric or mental examination by his/her own practitioner or forensic expert. 'Only if no additional relevant information could be gained by an examination of [plaintiff] should the motion for a psychiatric examination be denied.' Duncan vs. Upjohn Co., 155

---

[4] For example, in the context of a motion to amend the scheduling order to allow a Rule 35 examination, in Miksis v. Howard, 106 F.3d 754, 758 (7th Cir. 1997), the Court affirmed the trial court's denial of the amendment based upon the moving party's failure to demonstrate diligence in completing discovery. Likewise, in Briesacher v. AMG Res., Inc., 2005 U.S. Dist. LEXIS 37394 at *4-6 (N.D. Ind. Aug. 31, 2005), the court came to a similar result. Here, however, there is no request to amend the scheduling order to accommodate the Rule 35 examination.

F.R.D. 23, 25 (D. Conn. 1994)." <u>Ragge v. MCA Universal</u>, 165 F.R.D. at 608. Thus, the Court is hesitant to strictly enforce the ambiguous scheduling order to preclude the IME, given that it is required to evaluate the Rule 35 motion with liberality.[5]

**ORDER**

Based upon the foregoing, the Court **ORDERS**:

1. The motion for the mental health examination is **GRANTED**;
2. The IME with Dr. Ponton SHALL occur on January 23, 2012 at 9:00 a.m. at his office at 625 South Fair Oaks, Boulevard, Suite 390, Pasadena, CA.  The examination SHALL NOT exceed six hours and SHALL be conducted orally and in Spanish.  If, in the professional opinion of Dr. Ponton, Plaintiff is or becomes emotionally unable to proceed in the examination, he SHALL cease the examination immediately;
3. If Plaintiff chooses to use public transportation to travel to the examination, Defendant SHALL bear this cost of Plaintiff.  Otherwise Defendant SHALL pay the cost of Plaintiff's mileage to and from the examination at the rate of $.51 per mile;
4. Plaintiff is permitted to bring up to three family members with him to the examination.  The family members are permitted to be in a waiting area so that they are available to Plaintiff on breaks, but they SHALL NOT be present in the examination room.  The family members SHALL NOT interfere in the examination in any way;
5. Defendant SHALL produce to Plaintiff's counsel a copy of the examination results via e-mail or facsimile– whichever is preferred by Plaintiff's counsel–within 5 business hours of their availability but no later than 5:00 p.m. January 25, 2012;
6. Defendant SHALL produce to Plaintiff's counsel, a copy of Dr. Ponton's expert report as required by Fed. R. Civ. P. 26 (a)(2)(B) by 9:00 a.m. on January 26, 2012, via e-mail or facsimile, whichever is preferred by Plaintiff's counsel;

---

[5] <u>Minnard</u> came to the same result based upon a similar scheduling order though here, unlike in <u>Minnard</u>, there can be no dispute that Defendant has been on notice of the likely need for IME.  However, the Court does not find this fact to be determinative.  A finding of diligence is required to alter a scheduling order but that is not the issue before the Court.  Instead, as noted above, Rule 35 imposes no such requirement.

7. Defendant SHALL make Dr. Ponton available for deposition. The deposition SHALL occur no later than February 3, 2012 <u>unless</u> Plaintiff's counsel is unavailable to complete the deposition within this time frame. Only in this event may the deposition be completed until February 24, 2012.

IT IS SO ORDERED.

Dated:   **January 20, 2012**                                             /s/ Jennifer L. Thurston
                                                                            UNITED STATES MAGISTRATE JUDGE