1
2
3
4
5
6
7
8                    **IN THE UNITED STATES DISTRICT COURT**
9                  **FOR THE EASTERN DISTRICT OF CALIFORNIA**
10
11   AUGUSTIN SILVA,                    )    Case No.: 1:10-cv-02368 AWI JLT
                                        )
12                  Plaintiff,          )    ORDER GRANTING MOTION FOR
                                        )    INDEPENDENT MENTAL EXAMINATION
13         v.                           )
                                        )    (Doc. 19)
14   MERCADO FOOD ENTERPRISE, INC,      )
                                        )
15                  Defendant.          )
     _____)
16

17         Before the Court is the motion filed by Defendant to obtain an independent mental health

18   examination of Plaintiff.  (Doc.  19) Defendant contends that Plaintiff has placed his mental health in

19   controversy by alleging severe and ongoing mental health injuries resulting from the actions of

20   Defendant, by seeking damages to compensate for the cost of this past and ongoing treatment and by

21   indicating an intention to provide expert witness testimony at trial.  Id. at 5-7.  Likewise, Defendant

22   asserts that good cause exists to allow the examination due to Plaintiff's claim of an ongoing

23   psychological injury and to allow Defendant to be in a posture to present evidence that  "alternative

24   stressors" are to blame for any ongoing mental health impacts.  Id. at 7-8.  For the reasons set forth

25   below, the Court **GRANTS** the motion for the mental health examination.

26   **I.      Background**

27         In his complaint, Plaintiff alleges that while employed in the meat department of Defendant's

28   store, he was repeatedly sexually harassed by coworkers and one or more supervisors.  (Doc. 1 at 2)

                                            1

1  Plaintiff alleges that he reported the harassment but that this failed to stop the harassment.  Id.

2  Plaintiff alleges also that as a result of the harassment, he suffered emotional distress that required

3  him to seek mental health treatment.  Id. at 3.  Given the emotional impacts from the harassment,

4  Plaintiff claims that he has been unable to work and anticipates being unable to work for the

5  foreseeable future.  Id. at 3-4.

6      In his initial disclosures, made on May 12, 2011, Plaintiff identified his treating psychiatrist,

7  Dr. Fernandez, and reported that he would testify that the cause of Plaintiff's mental condition was

8  the alleged harassment.  (Doc. 23- 4 at 3.)  Likewise, Plaintiff asserted that his damages included

9  "emotional distress" and claimed that it was "significant enough to cause him to miss significant

10  work" and claimed that he would likely be off work for another year.  Id. at 3-4.  Plaintiff

11  supplemented his disclosures in June 2011, and identified other treating physicians though all but

12  one of these newly identified physicians, treated the allergic reaction Plaintiff suffered after taking

13  prescribed psychotropic medication.  (Doc. 23-5 at 2-4)  Also, Plaintiff identified the custodian of

14  records for the Mary K. Shell Mental Health Center and Dr. Alvarez.  Id. at 2.  Plaintiff indicated

15  that Dr. Alvarez would testify regarding treatment he provided Plaintiff after he suffered harassment

16  at work.  Id.  Notably, Dr. Fernandez was no longer identified as a witness.[1]  Id. at 2-4.  It is notable

17  also that Plaintiff captioned both of these disclosures as occurring pursuant to Fed. R. Civ. P. 26

18  (a)(1) and (2).  Thus, apparently, Plaintiff intended both of these disclosures to constitute expert

19  disclosure in addition to his initial disclosure.

20      In response to discovery, Plaintiff asserted that he was forced to take prescription medication

21  for the emotional upset caused by the harassment which led to a period of hospitalization caused by

22  an allergic reaction to the medication.  (Doc. 20-1 at 14) This cost approximately $70,000. (Doc. 20-

23  3 at 5)  He reported also that he continued to be treated for the anxiety and mental distress caused by

24  the harassment, he continued to suffer sleep interruption caused and has had symptoms consistent

25  with post traumatic stress disorder, panic and a fear of being around others.  (Doc. 20-1 at 14; Doc.

26  20-3 at 9, 10) Plaintiff identified his treating doctors. (Doc. 20-1 at 14-15)  Based upon these

27

28  [1] Around this same time, Plaintiff provided treatment records from Dr. Fernandez to Defendant, although the content of these records is not known.  (Doc. 23-6 at 3; Doc. 23-7 at 2)

ongoing problems, Plaintiff reported that he had not worked.  (Doc. 20-1 at 17) Plaintiff estimated

that, as of April 2011, he had lost $36,000 in lost wages and after that he would continue to lose

$1,560 per month as a result of Defendant's actions.  (Doc. 20-3 at 5)

On December 9, 2011, Plaintiff made his third expert disclosure.  (Doc. 20-3 at 17-19)  This

time, Plaintiff limited the information to the doctors who had provided psychiatric and medical care

which, he asserts, stemmed from the harassment.  The list is composed of all of the doctors from

both Rule 26 disclosures.  (Id; Doc. 23- 4 at 3; Doc. 23-5 at 2-4.)  Thus, Dr. Fernandez is listed and it

indicates that he was expected to testify that the sexual harassment caused Plaintiff's current mental

health condition and about the allergic reaction caused by the prescribed medication.  (Doc. 20-3 at

17.)

Defendant has retained licensed clinical psychologist, Dr. Marcel Ponton, to perform an

independent mental health examination of Plaintiff.  (Doc. 21)  Dr. Ponton attests that he intends to

exam Plaintiff via a clinical interview and standardized testing.  Id. at 2-4.  Dr. Ponton reports that,

"Standardized written tests are the only mechanism by which to obtain an objective evaluation of the

examinee's symptoms and history."  Id. at 4. Likewise, Dr. Ponton reports that the tests will assist

"in determining whether and to what extent Plaintiff is continuing to suffer emotional distress, as

well as the cause of any such continuing emotional distress.  Id. at 3.  Finally, Dr. Ponton asserts that,

"Testing also is used in assessing whether subjects are exaggerating or minimizing their symptoms,

and can provide an independent source of information concerning the level of stress experienced."

Id. at 3.  In whole, Dr. Ponton anticipates that the complete evaluation will take between five to

seven hours.  Id. at 2.

Defendant has scheduled the IME on January 23, 2012 and Dr. Ponton will be prepared to

submit to deposition before the expiration of the expert discovery period.  (Doc. 26 at 5)  Defendant

disclosed Dr. Ponton as its retained expert and also disclosed him as a rebuttal expert, albeit without

providing expert reports.[2]  (Docs. 26-2, 26-3)

---

[2]Defendant explains that Dr. Ponton is unable to prepare the report until he conducts the IME.  While not condoning
this course of action, the Court makes no comment on its propriety as this is peripheral to the issues raised by the motion and
its opposition.

3

1  **II.** **Analysis**

2    **A.** **Plaintiff's mental condition is at issue and there is good cause to order the**

3     **mental examination.**

4    If good cause is demonstrated, the Court "may order a party whose mental or physical

5  condition . . . is in controversy to submit to a physical or mental examination by a suitably licensed

6  or certified examiner." Fed. R. Civ. P. 35(a)(1); <u>Ford v. Contra Costa County</u>, 179 F.R.D. 579 (N.D.

7  Cal. 1998) ("It is well established that a party seeking to compel the psychiatric evaluation of an

8  adverse party must demonstrate that (1) the adverse party's mental condition is in controversy and

9  (2) there is good cause for the examination."). The moving party bears the burden of establishing the

10  "in controversy" and "good cause" requirements. <u>Schlagenhauf v. Holder</u>, 379 U.S. 104, 118 (1964).

11    In general, a party's mental condition is in controversy when the case involves, a claim for

12  intentional or negligent infliction of emotional distress, there is an allegation of a specific mental or

13  psychiatric injury or disorder, a claim of unusually severe emotional distress, the plaintiff offers

14  expert testimony to support the claim of emotional distress and when the plaintiff has conceded that

15  his mental condition is in controversy. See <u>Turner v. Imperial Stores</u>, 161 F.R.D. 89, 97 (S.D.

16  Cal.1995); <u>Ragge v. MCA/Universal Studios</u>, 165 F.R.D. 605, 608 (C.D. Cal. 1995). Here, there is

17  no dispute that Plaintiff's mental condition is "in controversy."  Indeed, the complaint, the

18  disclosures, the discovery responses and the expert disclosures make clear that Plaintiff's mental

19  condition is absolutely in controversy and has been since the inception of this case.

20    On the other hand, Plaintiff contends that there is not good cause for the examination. (Doc.

21  23 at 8-9) "Good cause" generally requires a showing of specific facts justifying the exam.  The

22  Court is to evaluate, for example, whether the information may be obtained through other means,

23  whether the plaintiff plans to prove his claim through testimony of expert witnesses, whether the

24  result of the examination would yield information that is relevant and whether plaintiff claims

25  ongoing emotional distress. See <u>Turner v. Imperial Stores</u>, 161 F.R.D. at 97-98 (expert testimony);

26  <u>Ragge v. MCA/Universal Studios</u>, 165 F.R.D. at 608 (ongoing emotional distress); <u>Schlagenhauf</u>,

27  379 U.S. at 118-119 (information otherwise available).

28    It is beyond dispute that Plaintiff intends to present expert testimony related to the ongoing

1   emotional damage claim, that he intends to prove his claim of ongoing emotional distress through

2   the presentation of expert testimony.   Moreover, there has been no argument that the examination

3   results would not be relevant.  Instead, Plaintiff argues only that the information is available without

4   need for the examination.[3] (Doc. 23 at 9.)  The Court notes that Dr. Ponton has asserted that he

5   cannot come to any objective conclusion about Plaintiff's mental state, and seems to contend that no

6   one else can either, unless the examination occurs.  (Doc. 21 at 4)  In particular, Dr. Ponton asserts,

7   "Standardized written tests are the only mechanism by which to obtain an objective evaluation of the

8   examinee's symptoms and history."  Id.  On the other hand, though the court is greatly concerned

9   that Defendant made no effort to depose Dr. Fernandez, Plaintiff's counsel admitted at the argument

10  on this motion, that there is no objective standardized testing contained in Dr. Fernandez's records.

11  Thus, though Plaintiff argues that everything that is needed to opine as to Plaintiff's mental state is

12  available in the records, this is contradicted by Dr. Ponton who makes clear that he can opine only if

13  he obtains this testing.  Therefore, the Court finds that the information is not otherwise available and

14  good cause exists to allow the examination.

15        Nevertheless, even where the mental condition is in controversy and good cause for the

16  examination has been shown, it is still within the Court's discretion to refuse to order an

17  examination.  Stinchcomb v. United States, 132 F.R.D. 29, 30 (E.D.Pa.1990).  Although the rule is to

18  be construed liberally to allow the examination, the court must balance the Plaintiff's interest in

19  avoiding unnecessary invasion of his privacy against Defendant's right to a fair trial.  Curtis v.

20  Express, Inc., 868 F.Supp. 467, 468 (N.D.N.Y.1994).

21        Here, Plaintiff argues, at least impliedly, that the Court should exercise its discretion to deny

22  the examination for several reasons.  First, Plaintiff argues that though he completed high school, he

23  is illiterate and is not fluent in English.  (Doc. 23 at 9) Thus, Plaintiff contends that he would need

24  someone to "read and interpret . . questions." (Doc. 23 at 9)  However, Defendant makes clear, and

25  Dr. Ponton's CV supports, that he is fluent in Spanish and particularly attuned to the impact of

---

26

27        [3]Moreover, Plaintiff suspects that Defendant will use the IME as an opportunity to "insert the possibility of other stressors."  Id. However, because Plaintiff himself, via his testimony and reports to doctors (Doc. 20-2 at 17, 18; Doc. 20-3 at 12, 13) has raised the specter that there are other stressors that may cause some of the emotional distress from which he suffers, this argument rings hollow.

28

1  mental and emotional disabilities on people of Latino descent.  (Doc. 26 at 6; Doc. 21 at 2, 4, 5)

2  Thus, the Court is assured that Dr. Ponton would not speak to Plaintiff in the language with which

3  Plaintiff is most comfortable.  Likewise, the Court presumes that the testing that Dr. Ponton intends

4  to conduct can be conducted orally, as would be required, given Plaintiff's reading deficits.

5        Plaintiff intimates that because he is "mildly retarded" somehow this would impact his ability

6  to participate in the testing.  (Doc. 23 at 9)  However, how or why this precludes the testing is not

7  explained. The question of greater concern to the Court, is whether Plaintiff is emotionally capable

8  of participating in the testing.  Counsel reports that Plaintiff "becomes very nervous" but inidcates

9  that this nervousness can be countered by the presence of a family member. Id.  However, other than

10  the claims of emotional distress, which was described in discovery to consist primarily of anxiety

11  and depression, the Court has no basis to determine that he is emotionally incapable of participating

12  in the testing.  Plaintiff does not provide any evidence from his treating physician that he is not

13  capable of doing so or that participation would cause him harm.  Therefore, the Court finds that

14  Defendant's right to a fair trial outweighs Plaintiff's right not to be subjected to the evaluation.

15        **B.        The demand for the IME is not untimely**

16        Plaintiff's primary argument against granting the motion is that it was not timely made.  He

17  asserts that an IME is part of "fact discovery" and, as a result, must occur during the non-expert

18  discovery period set forth in the scheduling order.  The order issued in this case required that all non-

19  expert discovery be completed no later than December 1, 2011.  (Doc. 14 at 2) Joint expert

20  disclosures were ordered to occur no later than December 9, 2011 and rebuttal disclosures to occur

21  by January 6, 2012.  Id.  Expert discovery was ordered to be completed by February 3, 2012.  Id.

22        The scheduling order required also that expert disclosure would occur pursuant to Federal

23  Rules of Civil Procedure 26 (a)(2), (A), (B), and (C) and that the disclosures were required to contain

24  all of the information outlined in these sections.  (Doc. 14 at 2) Likewise, the Court ordered that,

25        The provisions of Fed. R. Civ. P. 26(b)(4) and (5) shall apply to all discovery relating
          to experts and their opinions. Experts must be fully prepared to be examined on all

26        subjects and opinions included in the designation. Failure to comply will result in the
          imposition of sanctions, which may include striking the expert designation and

27        preclusion of expert testimony.

28  Id.  Likewise, the scheduling order reminded the parties of their obligation to supplement their

6

disclosures. Id. Impliedly, then, the scheduling order contemplated that at the time of the disclosure, the expert would have completed his analysis of the situation sufficiently to allow him to express his opinions in a written report. Fed. R. Civ. P. 26(a)(B) ([This disclosure must be accompanied by a written report . . . The report must contain: (i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them . . .") On the other hand, the scheduling order allowed that any non-dispositive motion could be filed as late as February 10, 2012. (Doc. 14 at 3) Clearly, a Rule 35 motion is a non-dispositive motion. Thus, there is an ambiguity in the order.

On the other hand, it appears clear that Plaintiff alerted Defendant that his mental condition was at issue from the earliest pleading. In his complaint for damages, for example, Plaintiff claimed that he had been unable to work and anticipated being unable to work for the foreseeable future due to the emotional toll wrought upon him by the alleged sexual harassment. (Doc. 1 at 3-4.) On the other hand, the Court is troubled by his "supplemental" initial disclosure, which occurred in June 2011. The Court recognizes that it is captioned as a "supplemental" but it contains some duplicated information such that it was not quite clear whether it was intended truly to supplement the previous disclosure or to amend it. The confusion was furthered by the statement that Plaintiff intended to incorporate the disclosure made by Defendant but made no such clarification as to his own, previously made disclosure. This situation is confounded, somewhat, by the fact that Plaintiff continued to press his emotional distress claims and supported these claims with records from Dr. Fernandez. (Doc. 23-6 at 3; Doc. 23-7 at 2)

Likewise, the effect of providing three expert disclosures with varying information was not explained to the Court's satisfaction. Even now the Court is not clear whether Plaintiff intends all three disclosures to constitute his "expert disclosure," or if the last one controls. If the former, the Court is not convinced how the varying descriptions of the witnesses' testimony can be harmonized. If the latter, the Court is not sure of the content of the "notice" conveyed to Defendant as to the expected testimony of witnesses that Plaintiff is required to provide under Fed. R. Civ. P. 26(a)(2)(C). Thus, the Court concludes that, though it was clear that Plaintiff had placed his mental condition in controversy, whether Plaintiff intended to offer the testimony of a psychiatrist was not.

1    In any event, Rule 35 does not set forth when a demand for an IME must be made.  Instead,

2    the Rule permits the Court to grant a request for an IME whenever a case is "pending."  Fed. R. Evid.

3    35.  Nevertheless, courts have taken different positions whether Fed. R. Civ. P. 26(a)(2) requires that

4    the IME report be produced at the time of the expert disclosure meaning by necessity, that any such

5    exam occur before the period for disclosure.[4]  In Minnard v. Rotech Healthcare Inc., 2008 U.S. Dist.

6    LEXIS 6149 at *6 (ED CA Jan. 15, 2008), the court determined that a report from an IME is, indeed,

7    an expert report.  The reasoning of the court that the report is an expert report under Fed. R. Civ. P.

8    26, the examining expert would not merely recite the objective results of the examination but would

9    interpret them and conclude for the trier of fact.  Id.  The Court agrees that if this were not so, no one

10   would bother retaining such an expert.  Instead, the expert is expected "to advocate within

11   reasonable grounds on behalf of the person for whom retained."  Id.  Thus, Minnard concluded that

12   the timing of the Rule 35 motion should, therefore, be dictated by the terms of the scheduling order.

13   Clearly, the Court may alter the deadlines set forth in Rule 26.  Indeed, the Rule repeatedly

14   indicates that its time frames apply unless the Court orders otherwise.  Thus, even if the Court here

15   adopts the Minnard rationale, as described above, the scheduling order here simply did not

16   contemplate the timing of an IME.  The Court is quite aware that when determining a Rule 35

17   motion, this Court is to construe Rule 35 liberally in favor of granting discovery. See Schlagenhauf

18   v. Holder, 379 U.S. at 114-115.  Likewise, a purpose of Rule 35 is to "'level the playing field'

19   between parties in cases in which a party's physical or mental condition is in issue. 'Granting a

20   request for a psychiatric examination pursuant to Rule 35 is to preserve [] the equal footing of the

21   parties to evaluate the plaintiff's mental state….' Ragge v. MCA Universal, 165 F.R.D. at 608.  "A

22   plaintiff has ample opportunity for psychiatric or mental examination by his/her own practitioner or

23   forensic expert. 'Only if no additional relevant information could be gained by an examination of

24   [plaintiff] should the motion for a psychiatric examination be denied.' Duncan vs. Upjohn Co., 155

25

26   _____

     [4]For example, in the context of a motion to amend the scheduling order to allow a Rule 35 examination, in Miksis
27   v. Howard, 106 F.3d 754, 758 (7th Cir. 1997), the Court affirmed the trial court's denial of the amendment based upon the
     moving party's failure to demonstrate diligence in completing discovery.  Likewise, in Briesacher v. AMG Res., Inc., 2005
28   U.S. Dist. LEXIS 37394 at *4-6 (N.D. Ind. Aug. 31, 2005), the court came to a similar result.  Here, however, there is no
     request to amend the scheduling order to accommodate the Rule 35 examination.

1    F.R.D. 23, 25 (D. Conn. 1994)." <u>Ragge v. MCA Universal</u>, 165 F.R.D. at 608. Thus, the Court is

2    hesitant to strictly enforce the ambiguous scheduling order to preclude the IME, given that it is

3    required to evaluate the Rule 35 motion with liberality.[5]

4                                                    **ORDER**

5           Based upon the foregoing, the Court **ORDERS**:

6           1.      The motion for the mental health examination is **GRANTED**;

7           2.      The IME with Dr. Ponton SHALL occur on January 23, 2012 at 9:00 a.m. at his office

8                   at 625 South Fair Oaks, Boulevard, Suite 390, Pasadena, CA.  The examination

9                   SHALL NOT exceed six hours and SHALL be conducted orally and in Spanish.  If, in

10                  the professional opinion of Dr. Ponton, Plaintiff is or becomes emotionally unable to

11                  proceed in the examination, he SHALL cease the examination immediately;

12          3.      If Plaintiff chooses to use public transportation to travel to the examination,

13                  Defendant SHALL bear this cost of Plaintiff.  Otherwise Defendant SHALL pay the

14                  cost of Plaintiff's mileage  to and from the examination at the rate of $.51 per mile;

15          4.      Plaintiff is permitted to bring up to three family members with him to the

16                  examination.  The family members are permitted to be in a waiting area so that they

17                  are available to Plaintiff on breaks, but they SHALL NOT be present in the

18                  examination room.  The family members SHALL NOT interfere in the examination in

19                  any way;

20          5.      Defendant SHALL produce to Plaintiff's counsel a copy of the examination results

21                  via e-mail or facsimile– whichever is preferred by Plaintiff's counsel–within 5

22                  business hours of their availability but no later than 5:00 p.m. January 25, 2012;

23          6.      Defendant SHALL produce to Plaintiff's counsel, a copy of Dr. Ponton's expert

24                  report as required by Fed. R. Civ. P. 26 (a)(2)(B) by 9:00 a.m. on January 26, 2012,

25                  via e-mail or facsimile, whichever is preferred by Plaintiff's counsel;

26   —————————————

27          [5]<u>Minnard</u> came to the same result based upon a similar scheduling order though here, unlike in <u>Minnard</u>, there can
     be no dispute that Defendant has been on notice of the likely need for IME.  However, the Court does not find this fact to
     be determinative.  A finding of diligence is required to alter a scheduling order but that is not the issue before the Court.

28   Instead, as noted above, Rule 35 imposes no such requirement.

1      7.     Defendant SHALL make Dr. Ponton available for deposition.  The deposition SHALL

2      occur no later than February 3, 2012 <u>unless</u> Plaintiff's counsel is unavailable to

3      complete the deposition within this time frame.  Only in this event may the deposition

4      be completed until February 24, 2012.

6 IT IS SO ORDERED.

7 Dated:   **January 20, 2012**                 **/s/ Jennifer L. Thurston**

8                         UNITED STATES MAGISTRATE JUDGE

10